UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | | |
|---|---|---|
| KELLEY CUNNINGHAM and TAMMYE CUNNINGHAM, JOHN PATRICK CONFAR, MICHAEL SNYDER, GREGORY BROUSSEAU and ROBERT SCHWAB Individually and on Behalf of all Other Persons Similarly Situated, | : : : : : : | |
| Plaintiffs, | : | Case No. 06-cv-03530 (RJH) |
| -against- | : : | |
| ELECTRONIC DATA SYSTEMS CORPORATION., | : : : | |
| Defendant. | : | |

----------------------------------------------------------------x

| | | |
|---|---|---|
| BRIAN STEAVENS, TAMURA L. GOLDBERG, DANIEL HEIN, and ROD DELUHERY Individually and on Behalf of All Other Persons Similarly Situated, | : : : : : | |
| Plaintiffs, | : | Case No. 08-cv-10409 (RJH) |
| -against- | : : | |
| ELECTRONIC DATA SYSTEMS CORPORATION, | : : : | |
| Defendant. | : | |

----------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION, COURT-AUTHORIZED NOTICE AND OTHER RELIEF PURSUANT TO SECTION 16(B) OF THE FAIR LABOR STANDARDS ACT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 1

   I.   PROCEDURAL HISTORY ............................................................................ 3

  II.  STATEMENT OF FACTS ............................................................................. 4

      A.  EDS Groups Similarly-Situated Jobs into Job Families .................................. 4

      B.  EDS Job Codes ................................................................................................. 6

      C.  The Three Proposed Subclasses ....................................................................... 7

          1.   The Service Delivery Job Family Subclass ........................................... 7

          2.   The Technical Delivery Job Family Subclass......................................... 10

          3.   Corporate Job Family............................................................................. 12

 III.  ARGUMENT ................................................................................................. 13

      A.  The FLSA Statutory Framework ..................................................................... 13

      B.  Plaintiff's Burden is Minimal at the First Conditional Certification Stage ............... 14

      C.  Plaintiffs have Satisfied Their Minimal Burden for Obtaining Conditional
          Certification ..................................................................................................... 17

      D.  Court-facilitated Notice Is Appropriate............................................................ 21

      E.  Production of A List of Collective Action Class Members is Necessary To Facilitate
          Notice ............................................................................................................. 23

CONCLUSION............................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases:**

*Beauperthuy v. 24 Hour Fitness USA, Inc*., 2007 WL 707475 (N.D. Cal. Mar. 6, 2007) ............ 21

*Braunstein v. Eastern Photographic Laboratories, Inc*., 600 F.2d 335 (2d Cir. 1978) ............ 1, 14

*Camp v. Progressive Corp.,* 2002 WL 31496661 (E.D. La. Nov. 8, 2002) ................................ 19

*Chowdhury v. Duane Reade, Inc.,* 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007) ........................... 2

*Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5,. 2006) .. *passim*

*Eldred v. Comforce Corp.*, 2010 U.S. Dist. LEXIS 18260 (S.D.N.Y. March 2, 2010) ......... 14, 16

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) .............................. 2

*Gerlach v. Wells Fargo*, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ...................................... 19

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) ............. 2, 16

*Harrington v. Educ. Mgmt. Corp.*, 2002 U.S. Dist. LEXIS 10966 (S.D.N.Y. June 18, 2002) ..... 15

*Herring v. Hewitt Associates, Inc.*, 2007 WL 2121693 (D.N.J. July 24, 2007) ......................... 19

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) .......................................... 14, 15, 22

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) .................................................... *passim*

*Jacobson v. Stop & Shop Supermarket Co*., 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. 2002) ......... 2

*Krueger v. N.Y. Tel. Co.*, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993) ..................... 16

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ....................................... 1, 14, 18

*Lewis v. Wells Fargo & Co*., 669 F. Supp. 2d 1124 (N.D. Cal. 2009) ............................ 19, 20, 21

*Malloy v. Fleischman & Associates, Inc.*, 2009 WL 1585979 (S.D.N.Y. June 3, 2009) ... 2, 19, 20

*Masson v. Ecolab, Inc.*, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ......... 15, 17, 19

*Mazur v. Olek Lejbzon & Co*., 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 30, 2005) ........... 15

*Motron v. Valley Farm Transport, Inc*. 2007 WL 1113999 (N.D. Cal. April 13, 2007) ............. 18

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) ......................................... 18, 23

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) .................................... 16

*Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691 (8th Cir. 1998) ............................................ 22

*Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002) ............... 2, 19, 23

*Sabre v. First Dominion Capital, LLC*, 2001 U.S. Dist. LEXIS 20637 (S.D.N.Y. Dec. 12, 2001) 2

*Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) ................................... 2

*Scott v. Aetna Services, Inc.*, 210 F.R.D. 261 (D. Conn. 2002) ..................................... 19

*Torres v. Gristede's Operating Corp.* 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006) 14

*Toure v. Cent. Parking Sys. of N.Y.*, 2007 WL 2872455 (SDNY Sept. 28, 2007) ...................... 15

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ...................................... 15, 18

**Statutes & Rules:**

29 U.S.C. § 216(b) ("Fair Labor Standards Act") .................................................. *passim*

Federal Rule of Civil Procedure 23 ................................................................ 15, 19, 22

## INTRODUCTION

Plaintiffs, Brian Steavens, Tamura Goldberg, Daniel Hein, Robert Schwab, John Confar, Gregory Brousseau, and Rod Deluhery ("Plaintiffs"),[1] move for an order conditionally certifying this nationwide collective action and facilitating judicial notice of this lawsuit pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").  Plaintiffs and the proposed collective action members are current and former technical support employees of Defendant Electronic Data Systems ("EDS").  Conditional certification is appropriate under *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), inasmuch as these technical support workers are all similarly situated with respect to their FLSA claims for unpaid overtime work.  They each perform similar job duties and are uniformly misclassified as exempt.

The standard for authorizing notice is lenient under 29 U.S.C. § 216(b).  Plaintiffs' burden is to demonstrate that they are "similarly situated" to the potential opt-in plaintiffs, which requires a "modest showing sufficient to demonstrate that [they] and the potential plaintiffs together were victims of a common policy or plan that violated the law."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citations omitted).  Since the Supreme Court's decision in *Hoffmann-La Roche Inc. v. Sperling,* courts in this circuit have liberally granted §216(b) conditional certification and notice in FLSA collective actions, including, as here, in information technology support cases.[2]  *See, e.g., Malloy v. Fleischman & Associates, Inc.*, 2009

---

[1]  Other named and opt-in plaintiffs have either withdrawn from the action or are soon expected to resolve their individual claims.  The motion now before the Court is on behalf of those remaining Plaintiffs who are moving for collective action treatment.

[2]  While the Supreme Court's decision *in Hoffman-La Roche* examined the propriety of court-ordered notice under § 216(b) in the context of an Age Discrimination in Employment Act ("ADEA") collective action, because the ADEA incorporates § 216(b), *Hoffman-La Roche* applies with equal force to FLSA cases.  *See, e.g.*, *Braunstein v. E. Photographic Labs.*, *Inc.*, 600

1

WL 1585979 (S.D.N.Y. June 3, 2009) (technical support workers*); see also Chowdhury v. Duane Reade, Inc.,* 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003); *Jacobson v. Stop & Shop Supermarket Co.*, 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. 2002); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002); *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005).

As set forth below, Plaintiffs have presented more than sufficient evidence that they and the proposed class members are similarly situated to satisfy the threshold standard for conditional certification. That evidence lies in EDS' own job classification documents, the deposition testimony of EDS' corporate representative (who is also the company's wage and hour compliance manager) and whose testimony is therefore binding on EDS, *Sabre v. First Dominion Capital, LLC*, 2001 U.S. Dist. LEXIS 20637, at *2 (S.D.N.Y. Dec. 12, 2001), and the deposition testimony of seven named Plaintiffs and 19 opt-in plaintiffs who have already filed consents to join this action.

All of the evidence shows that Plaintiffs and the proposed collective action members are (or were during the statutory period) uniformly classified as exempt under EDS' job family classification scheme, and notwithstanding variances in job titles and codes, their primary job duties consisted of installing, maintaining, and/or supporting computer software and/or hardware. Using a company-wide job analysis scheme, EDS classifies these technical support workers into the job families, including, as is here relevant, the "service delivery job family", "technical delivery job family" and the "corporate job family." EDS' corporate representative has admitted that the families and the exempt job codes within the job families are similarly

---

F. 2d 335 at 336; *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003).

situated, and intended to be similarly situated, by virtue of the similar job duties and uniform

exemption classifications.

Accordingly, Plaintiffs seek an order conditionally certifying this collective action

consisting of three classes of technical support workers with exempt job codes as follows:

- **Class A:  Service Delivery Job Family -** consisting of Systems
  Administrators (34060, 34070, 34080); Telecommunications Analysts (34500,
  34510, 34520), and Service Center Analysts (34530, 34540, 34550);

- **Class B:  Technical Delivery Job Family -** consisting of Infrastructure
  Analysts (34260, 34270, 34280), and Information Analysts (34330, 34200,
  34210, 34220); and

- **Class C: Corporate Job Family -** consisting of Information Security
  Analysts (33700, 33710, 33720, 33730).

Plaintiffs note that the limitation to these three subclasses and families of jobs is a

limitation from the originally pled putative collective action class (which was all "3" level

employees), a limitation and focus resulting from the discovery that was undertaken.

Plaintiffs request that an order that all current and former employees who held these

positions at EDS (now known as the Enterprise Services Division of Hewlett Packard) at any

time for three years prior to the issuance of a notice be given an opportunity to join this

collective action by filing a Consent to Join form within 90 days of the issuance of the notice.

*Hoffmann-LaRoche*, 493 U.S. at 172.

## I.     PROCEDURAL HISTORY

On May 10, 2006, the *Cunningham* action was filed  in this Court initiating this litigation.

On October 23, 2007, Brian Steavens filed his complaint in the United States District Court for

the Eastern District of Michigan.  On December 2, 2008, the *Steavens* case was transferred to

New York, where, pursuant to this Court's Order of March 5, 2009 (*Cunningham* Docket No.

49), joint pretrial discovery in the two actions was thereupon undertaken "relevant to

determining whether first phase conditional certification of a class was appropriate." Pursuant to

that Order, this motion is being made for collective action certification of Plaintiffs' FLSA

claims based upon the first phase certification-discovery.

## II.     STATEMENT OF FACTS

### A.      EDS Groups Similarly-Situated Jobs into Job Families

EDS provides information technology and business process outsourcing services to

private and public sector clients both nationwide and around the world.[3] *See* Memorandum

Order and Opinion, dated March 31, 2010 (*Cunningham* Docket No. 129) at 1-2.  On a

nationwide basis, EDS groups employees who perform similar work into job families and, within

each job family, into jobs or job codes. Lesser Dec. Ex. 1 (Evans Dep.) at 86.[4]  EDS

accomplishes this standardized job classification scheme by utilizing a process called "job

analysis."

EDS defines job analysis as the "process of defining a job in terms of its component tasks

or duties and the knowledge or skills required to perform them."  Lesser Dec. Ex. 1 (Evans Dep.

Ex. 4); Lesser Dec. Ex. 41 at Bates EDS7036.  Using this process, EDS assigns the same job

code to employees performing similar duties.  Lesser Dec. Ex. 1 (Evans Dep.) at 92; Lesser Dec.

Ex. 35.  According to the company's representative, the majority of the employees are correctly

coded and the companies' instructions documents sought to have "at least an 80% match

---

[3] In or about September, 2009, EDS changed its name to "HP Enterprise Services" following its
acquisition by Hewlett Packard, and its employees were subsumed into a division of Hewlett
Packard, from whom they receive their paychecks.   Lesser Dec. Ex. 1 (Evans Dep.) at 5-6.

[4] Michael Evans was EDS' designated corporate representative.  Lesser Dec. Ex. 1 (Evans Dep.)
at 6-7.  Since 1998, he has been primarily responsible for ensuring the company's pay practices
and all other related employment activities complied with federal and state wage and hour
regulations.  Lesser Dec. Ex. 1 (Evans Dep.) at 9-10.

between the job code description and the employee's duties and responsibilities."  Lesser Dec. Ex. 1 (Evans Dep.) at 87; Lesser Dec. Ex. 43 at 31 (Bates EDS7050).

One of the stated purposes of the Job Analysis system used by EDS is to "ensure compliance with work-related employment laws and regulations," and that would include compliance with federal and state wage and hour laws and regulations.  Lesser Dec. Ex. 1 (Evans Dep.) at 77; Lesser Dec. Ex. 41, at Bates EDS7037.  Indeed, lest there be any ambiguity in this regard for their relevance to this litigation, EDS' core training materials state, as the very first "Implication of Incorrect Job Coding," the "Risk of non-compliance with labor laws & regulations" (Lesser Dec. Ex. 42 at 23 (Bates EDS7042)) and in selecting a job code, "Getting the [FLSA] exemption status right is the first and most important step."  Lesser Dec. Ex. 43 at 32 (Bates EDS7051).  In short, EDS knew full well that the job codes assigned to individuals on a prescribed, systematic basis whose importance was emphasized had significance for FLSA purposes.[5]

EDS job code structure consists of "job families" which are defined by the company as:

- A collection of jobs that involve *similar* types of work.

    - Assists leaders in searching for specific job codes along particular functional lines.

    - It helps to reduce the number of available job codes that will be appropriate for the employee.

- All job families are designed as a planned progression of work, with each succeeding level becoming more complex and requiring greater knowledge and expertise.

---

[5] Indeed, the significance and "sensitive nature" of these kinds of reviews was expressly stated when the company undertook periodic reviews of positions.  *See, e.g.,* Lesser Decl. Ex. 46 at 1 (Bates EDS15308) ("Due to the sensitive nature of this review and the absolute necessity for this to appear as a 'routine review', communication regarding this activity (even among senior leaders) must be extremely limited.") (emphasis in original).

Lesser Dec. Ex. 40 at 9 (Job Code Training - US HR Team) at Bates EDS7028 (emphasis added).  As its corporate representative affirmed, one of the purposes of grouping job codes into job families is to have uniformity of job duties and responsibilities within each job family, and, as just noted, the majority of employees were intended to be, and were, as the corporate designee admitted, correctly coded.[6]

**B.    EDS Job Codes**

Each job family has a series of five-digit job codes with associated job titles.  Lesser Dec. Ex. 40 at 12 (Bates EDS7031); Lesser Dec. Ex. 36 (Job Matrices Job Codes).  Within the job titles, the "behaviors" are "expected" to be consistent irrespective of the family.  *See* Lesser Dec. Ex. 13 at 3-13 (2007 EDS Shared Competencies) at Bates EDS4040-50; *see also* Lesser Dec. Ex. 37 (describing competencies at the various levels).  According to EDS' own documents, "a job code is used to identify a given set of duties and responsibilities assigned to individuals whose work is of the *same* nature and level…." Lesser Dec. Ex. 1 (Evans Dep.) at 74; Lesser Dec. Ex. 33 at 66 (PMP Annual Review Coaching Guide for Leaders) at Bates EDS3901; Lesser Dec. Ex. 2 at 74 (Performance Management Program Tool Help 2006) at Bates EDS3981.  EDS itself also defines a job as a "Homogenous cluster of work tasks…." Lesser Dec. Ex. 41 at 16 (Job Analysis Basics) at Bates EDS7035.  And, EDS recognizes the need for a uniform set of duties and

---

[6] EDS' training tool, labeled "Job Code Training – US HR Team" March 19, 2007, was used to train employees on how to assign positions the proper job codes at EDS company-wide.  Lesser Dec. Ex. 1 (Evans Dep.) 70, 75; Lesser Dec. Ex. 40, at Bates EDS7020-7033; *see also* Lesser Dec. Ex. 41 at Bates EDS7034-7040.  Mr. Evans acknowledged that EDS would not give inaccurate training documents to its employees.  Lesser Dec. Ex. 1 (Evans Dep.) at 67.

Other documents evidence a recognition that job designations possessed "the same core job functions", *see* Lesser Dec. Ex. 47 at 1 (Bates EDS15873), and that job codes sometimes required changes for individuals when their actual job responsibilities changed.  *See, e.g.,* Lesser Dec. Ex. 45 at Bates EDS9842.

responsibilities within a job code since it advises its employees that having this uniformity "provides an *objective* basis for hiring, evaluating, training, promoting and determining salary," (Lesser Dec. Ex. 41 at 18 (Job Analysis Basics) at Bates EDS7037), and that a "[j]ob analysis is conducted on the job *not the person doing the job*."  Lesser Dec. Ex. 43 at 31 (Selecting the Appropriate EDS Job Code) at Bates EDS7050.

For each job code, EDS has a job description that includes the important duties and responsibilities of each job code.  Lesser Dec. Exh. 40 at 8 (EDS Job Code Structure) at Bates EDS7027.  EDS acknowledges that these corporate job descriptions "must be broad enough for use throughout EDS" globally and across all industries and work locations.  *Id.*

Thus, as EDS itself acknowledges, the job codes within the three job families at issue herein: the Service Delivery Family, the Technical Delivery Family, and the Corporate Job Family perform "*similar*" work and share related responsibilities.

**C.      The Three Proposed Subclasses**

1.   <u>The Service Delivery Job Family Subclass</u>

The collective action members in the Service Delivery Family all hold similar job codes performing non-managerial technical support work that does not involve running EDS' business; i.e., have as their primary duties installing, maintaining, and/or supporting computer hardware and/or software.  The positions in this family consist of Systems Administrators (Job Codes 34060, 34070 and 34080), Telecommunications Analysts (Job Codes 34500, 34510 and 34520) and Service Center Analysts (Job Codes 34530, 34540 and 34550).  Lesser Dec. Ex. 30-32 at Bates EDS757-766, EDS833-894, EDS1161-1172.  The named and opt-in Plaintiffs in this Family are Tamura Goldberg (Systems Administrator, 34060), Gregory Brousseau (Systems Administrator, 34060), Rod Deluhery (Systems Administrator Advanced, 34070), John Confar

(Telecommunications Analyst, 34520), Edward Conklin (Service Center Analyst, 34530), James McCann (Service Center Analyst Advanced, 34540), Dennis Duley (Service Center Analyst Advanced, 34540), and Robert Sanetz (Service Center Analyst Advanced 34540).

As EDS' Job Matrices and job descriptions show, these positions all have similar key qualitative functions, and the non-material differences among them simply amount to "job progressions" of these related positions, none of which are relevant to the claims in this case. The Job Matrices and the job descriptions are attached to the Lesser Declaration as Exhibits 30-32.

As both the Defendant's own documents (Lesser Dec. Ex. 31) show, and the deposition testimony of the Plaintiffs and opt-ins support, all System Administrators, regardless of their position and job code, are subject to the same EDS policy or practice regarding overtime pay – they are paid on a salaried basis, classified as exempt, ineligible for overtime pay, and do not receive overtime pay.  Lesser Dec. Ex. 1 (Evans Dep.) at 131-132.  Moreover, all system administrators performed the same key job roles: performed various tasks related to local networks and wireless networks, analyzing and troubleshooting connection issues.[7]

The same is true for Telecommunications Analysts (Lesser Dec. Ex. 32).  Regardless of their job codes or job titles, they are all subject to the same EDS policy and practice regarding overtime pay – they are paid on a salaried basis, classified as exempt, ineligible for overtime pay

---

[7] *See* Lesser Dec. Ex. 14 (Goldberg Dep.) at 99, 222, 226-28 (EDS Job Title: Systems Administrator [EDS Job Code: 34060]: installed, moved, added and changed personal computers, and performed general troubleshooting and incident resolution.); Lesser Dec. Ex. 5 (Brousseau Dep.) at 143-44 (EDS Job Title: System Administrator [EDS Job Code: 34060]: performs duties set forth in EDS job description, including problem resolution, but not network design or support of wireless or campus-area networks); Lesser Dec. Ex. 10 (Deluhery Dep.) at 262-64 (EDS Job Title: System Administrator -Advanced [EDS Job Code: 34070]: installed microcomputers; monitored, operated and maintained hardware and software; resolved problems).

and do not receive overtime.  Likewise, as both the deposition testimony and EDS' documents show, the key non-managerial technical support job roles they perform, such as the installation, relocation and removal of telephone systems and determining cause of project delays are similar. Lesser Dec. Ex. 32 at 10-12 (Bates EDS1170-2).[8]

Finally, as the evidence shows, all EDS Service Center Analysts hold similar job positions, performing non-managerial technical support that does not involve running EDS' business.  Lesser Dec. Ex. 30.  Again, as both EDS' documents indicate and the deposition testimony of the Plaintiffs support, they play similar roles in maintaining and servicing technical infrastructure.  For example, Service Center Analysts, regardless of their job code, all engage in systems support, such as repairing, installing, monitoring, and troubleshooting both software and hardware issues.[9]

Thus, a review of relevant portions of the job descriptions and job matrices for the three general positions at issue within the Service Job Family show that they all play similar roles in maintaining and servicing technical infrastructure of EDS' clients and the work performed by these collective action members is similar.

---

[8] *See* Lesser Dec. Ex. 8 (Confar Dep.) at 52-56, 63-64, 88-89 (EDS Job Title: Telecommunications Analyst [EDS Job Code: 34520]: performed maintenance, upgrades and troubleshooting for EDS's Global Network Operations Center [GNOC]).

[9] Lesser Dec. Ex. 9 (Conklin Dep.) at 61-67 (EDS Job Title: Service Center Analyst [EDS Job Code: 34530]: installing and setting up servers, repairing and maintaining machines, and troubleshooting); Lesser Dec. Ex. 11 (Duley Dep.) at 60-61 (EDS Job Title: Service Center Analyst- Advanced [EDS Job Code: 34540]: "I would say I provide hardware support, which would be installation, maintenance, troubleshooting, upgrading of equipment within the Charlotte data center."); Lesser Dec. Ex. 20 (McCann Dep.) at 114-17 (EDS Job Title: Service Center Analyst – Advanced [EDS Job Code: 34540]: installs, supports and maintains network hardware for EDS Charlotte Data Center); Lesser Dec. Ex. (Sanetz Dep.) at 44-48 (EDS Job Title: Service Center Analyst - Advanced[EDS Job Code: 34540]: installing, maintaining and troubleshooting computers).

2.   <u>The Technical Delivery Job Family Subclass</u>

The Technical Delivery Job Family includes Infrastructure Analysts (Job Codes 34260,

34270, 34280) and Information Analysts (34330, 34200, 34210, 34220).  As with the Service

Delivery Job Family, although the collective action members in this subclass may have different

titles and/or different job codes, they all perform similar non-managerial duties consisting of

installing, maintaining, and/or supporting computer hardware and/or software.  *See* Lesser Dec.

Ex. 29 (Bates EDS377-390), Ex. 27 (Bates EDS1-13).[10]  All of these positions are classified by

---

[10] Lesser Dec. Ex. 2 (Ahlberg Dep.) at 28-33 (EDS Job Title: Infrastructure Specialist [EDS Job
Code: 34270]: installs, supports and configures networking equipment, including troubleshooting
problems); Lesser Dec. Ex. 3 (Barrix Dep.) at 32; 91-95 (EDS Job Title: Information Analyst
[EDS Job Code: 34200]: installs, monitors and maintains software, systems and hardware);
Lesser Dec. Ex. 4 (Brignola Dep.) at 171-73 (EDS Job Title: Infrastructure Analyst [EDS Job
Code: 34260]: performs duties set forth in EDS job description, including problem resolution
subject to approval of supervisor); Lesser Dec. Ex. 6 (Brown Dep.) at 28-30 (EDS Job Title:
Infrastructure Specialist – Senior [EDS Job Code: 34280]: performed troubleshooting on EDS's
Nextel network and later on EDS's global network); Lesser Dec. Ex. 12 (Fugitt Dep.) at 35-37
(EDS Job Title: Infrastructure Analyst [EDS Job Code: 34260]: provides local network area
support); Lesser Dec. Ex. 13 (Geary Dep.) at 9, 160-62, 253-56, 286 (EDS Job Title: Information
Specialist – Senior [EDS Job Code: 34220]: supported Maximo application through second-tier
help desk); Lesser Dec. Ex. 15 (Habbal Dep.) at 37-38 (EDS Job Title: Infrastructure Specialist
[EDS Job Code: 34270]: maintenance, support and troubleshooting of servers); Lesser Dec. Ex.
16 (Ham Dep.) at 106-07, 164-68 (EDS Job Title: Information Analyst [EDS Job Code: 34200]:
application support, batch-run processing and problem resolution); Lesser Dec. Ex. 17 (Hein
Dep.) at 98-105 (EDS Job Title: Infrastructure Analyst [EDS Job Code: 34260]: network support
and troubleshooting); Lesser Dec. Ex. 18 (Hernandez Dep.) at 26-33, 45, 54-61, 71-75 (EDS Job
Title: Infrastructure Analyst [EDS Job Code: 34260]: network support and troubleshooting for
servers); Lesser Dec. Ex. 19 (Hightower Dep.) at 43-47, 76-79, 93-94 (EDS Job Title:
Information Analyst [EDS Job Code: 34200]: support for batch-scheduling application software);
Lesser Dec. Ex. 21 (Merritt Dep.) at 118-125 (EDS Job Title: Infrastructure Analyst [EDS Job
Code: 34260]: resolved system infrastructure problems); Lesser Dec. Ex. 22 (Pedrie Dep.) at 25-
26, 29-30 (EDS Job Title: Infrastructure Specialist [EDS Job Code: 34270]: installing,
configuring and maintaining storage area networks; allocating storage; troubleshooting and
problem resolution); Lesser Dec. Ex. 23 (Pilon Dep.) at 59-66 (EDS Job Title: Infrastructure
Analyst [EDS Job Code: 34260]: troubleshooting and maintaining voiceover IP phones and
servers); Lesser Dec. Ex. 25 (Schwab Dep.) at 80-88 (EDS Job Title: Infrastructure Analyst
[EDS Job Code: 34260]: remotely installing and upgrading computer software; troubleshooting);
Lesser Dec. Ex. 26 (Steavens Dep.) at 104-118 (EDS Job Title: Infrastructure Analyst [EDS Job

EDS as exempt.  The named and opt-in Plaintiffs in this Family are Brian Steavens (Infrastructure Analyst, 34260), Robert Schwab (Infrastructure Analyst, 34260), Daniel Hein (Infrastructure Analyst, 34260), Milton Fugitt (Infrastructure Analyst, 34260), Lawrence Pilon (Infrastructure Analyst, 34260), Steven Merritt (Infrastructure Analyst, 34260), Hugo Hernandez (Infrastructure Analyst, 34260), James Brignola (Infrastructure Analyst, 34260), Rick Ahlberg (Infrastructure Specialist, 34270), Ahmad Habbal (Infrastructure Specialist, 34270), John Pedrie (Infrastructure Specialist, 34270), Patrick Brown (Infrastructure Specialist Senior, 34280), Paul Barrix (Information Analyst, 34200), Mary Ham (Information Analyst, 34200), Jennifer Hightower (Information Analyst, 34200), and Donna Geary (Information Specialist Senior, 34220).

EDS' corporate representative testified to the similarity of the job duties within this technical job family in the same manner as with the jobs in the Service Delivery Job Family. Presented with the *Technical Delivery Job Family, Infrastructure Competency Based Matrix*, the corporate representative admitted that the key job roles and job progressions are the same companywide for the Infrastructure Analyst (34260), Infrastructure Analyst Advanced (34270), and Infrastructure Analyst Senior (34280), regardless of work location (or home-based office location) and client assignment.  Lesser Dec. Ex. 1 (Evans Dep.) at 141; Lesser Dec. Ex. 29 (Evans Dep. Ex. 11), at Bates EDS377, 378, 380, 387-390.  All employees in these job codes are subject to the same policy or practice regarding overtime pay, are paid on a salaried basis, classified as exempt, ineligible for overtime pay under EDS policy, and none received overtime pay.  Lesser Dec. Ex. 1 (Evans Dep.) at 140.

---

Code: 34260]: installs cabling, connects computers to networks and resolves connectivity problems).

Moreover, in his deposition, EDS' corporate representative admitted that the key job roles and job progressions within the two positions of the Technical Delivery Job Family are the same companywide, regardless of work location (or home-based office location) and client. Lesser Dec. Ex. 1 (Evans Dep.) at 143; Lesser Dec. Ex. 27 (Evans Dep. Ex. 12) at Bates EDS1-3, 10-13.  And, importantly, all employees in these positions are subject to the same policy or practice regarding overtime pay, are paid on a salaried basis, classified as exempt, ineligible for overtime pay under EDS policy, and none received overtime pay.  Lesser Dec. Ex. 1 (Evans Dep.) at 142.  Again, therefore, all of the individuals within this particular job family are similarly situated for present purposes.

3.  <u>Corporate Job Family</u>

The positions at issue for the Corporate Job Family consists of just one position – Information Security Analyst (33700, 33710, 33720 and 33730).  Lesser Dec. Ex. 28 (Bates EDS262-272).  Two individuals presently before the Court are in this Family, Leslie Char and Christopher McLeieer.  Again, EDS itself has admitted that the employees who hold this position are similarly situated in that they all provide technical support related to the security features of computer systems.  *See* Lesser Dec. Ex. 28 at 9-11 (Bates EDS270-72).  Consistent with this description and in common parlance, this means that these individuals performed the same non-managerial duties related to access to the computer networks, providing proper passwords or resetting the passwords of the users of the networks, virus protection and quarantine of websites that have been attacked by viruses, adding websites to a firewall, installing virus protection and detecting and scanning for viruses on end users computers.  This is precisely what Mr. Char testified he did.  *See* Lesser Dec. Ex. 7 (Char Dep. and Exhibit 4 to the same) at 47-49 and Exhibit, and, generally, at 40-60.

Here, again, EDS' Rule 30(b)(6) witness also confirmed the similarity of the job duties of all Information Security Analysts with the job codes of 33700, 33710, 33720 and 33730 when he testified that the key job roles for this position were the same regardless of work location (or home-based office location) and client assignment.   Lesser Dec. Ex. 1 (Evans Dep.) at 168-172. And as with the positions in the Security Delivery Family and the Technical Delivery Family, all employees in these job codes are also subject to the same policy or practice regarding overtime pay, are paid on a salaried basis, classified as exempt, ineligible for overtime pay under EDS policy, and none received overtime pay.  Lesser Dec. Ex. 1 at 136-137; Lesser Dec. Ex. 7 (Char Dep.) at 57.

## III.    ARGUMENT

### A.    The FLSA Statutory Framework

The FLSA's collective action provision allows one or more employees to bring an action for unpaid overtime compensation on "behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).  District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs so that they may choose to "opt in" to the suit.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-170 (1989).  The collective-action procedure allows for the efficient adjudication of similar claims so "similarly situated" employees whose claims are often small and not likely to be brought on an individual basis, may join together to prosecute their claims.  *Hoffman-LaRoche*, 493 U.S. at 170.  An individual who elects to opt-in to the collective action must provide consent, in writing, and such consent must be filed in the court where the action is pending.  *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, at *7 (S.D.N.Y. Oct. 5, 2006*); Hoffman-La Roche*, 493 U.S. at 168.  The

statute of limitations runs on each employee's claims until the opt-in form is filed.  *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

To serve the "broad remedial purpose" of the FLSA, courts can order notice of the opportunity to "opt-in" to other potential similarly situated employees.  *Damassia,* 2006 U.S. Dist. LEXIS 73090, at *7; *accord Hoffman-La Roche*, 493 U.S. at 173; *Braunstein v. Eastern Photographic Laboratories, Inc*., 600 F.2d 335, 336 (2d Cir. 1978).  Court-supervised notice is the preferred method for managing this notification process because it avoids "multiplicity of duplicative suits;" allows the court to set deadlines to advance the disposition of the action; obviate disputes between the parties regarding the content of the notice, and protects plaintiffs' claims from expiring under the statute of limitations.  *Hoffman-La Roche*, 493 U.S. at 172; *Hoffman*, 982 F. Supp. at 260.  "By monitoring preparation and distribution of the notice, a court can ensure that [the notice] is timely, accurate and informative."  *Hoffman La-Roche*, 493 U.S. at 172.

### B.   Plaintiff's Burden is Minimal at the First Conditional Certification Stage

Courts in this jurisdiction apply a "fairly lenient standard" in deciding whether to grant a plaintiffs' request for conditional certification at this stage of a proposed collective action under 29 U.S.C. § 216(b).  *Torres v. Gristede's Operating Corp.* 2006 U.S. Dist. LEXIS 74039, *37-38 (S.D.N.Y. Sept. 28, 2006) (quoting *Moss v. Crawford & Co.,* 201 F.R.D. 398, 409) (W.D. Pa. 2000).  Plaintiffs only need to demonstrate that they are "similarly situated" to the potential plaintiffs, by making a "modest showing" sufficient to demonstrate that they "and the potential plaintiffs together were victims of a common policy or plan that violated the law."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citations omitted); *accord Eldred v. Comforce Corp.*, 2010 U.S. Dist. LEXIS 18260 at *41 (S.D.N.Y. March 2, 2010) (citing cases);

*see also Damassia*, 2006 U.S. Dist. LEXIS 73090, at *9; *Hoffman*, 982 F. Supp. at 961; *Masson v. Ecolab, Inc*., 2005 U.S. Dist. LEXIS 18022, at *38 (S.D.N.Y. Aug. 17, 2005) ("[C]ourts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate."); *Harrington v. Educ. Mgmt. Corp*., 2002 U.S. Dist. LEXIS 10966, at *4 (S.D.N.Y. June 18, 2002) (authorizing notice to employees who held the same title "or those with 'similar titles' " on the grounds that it may enable more efficient resolution of the underlying issues). The standard is well-recognized in this Court to be "considerably more liberal than class certification under [Federal Rule of Civil Procedure] Rule 23." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007); *accord Dumitrescu v. Mr. Chow Enterprises, Ltd.*, 2008 U.S. Dist LEXIS 49881, at *6 (June 30, 2008).

The court assesses whether there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees,]" in determining whether plaintiffs are similarly situated. *Toure v. Cent. Parking Sys. of N.Y.*, 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007) (quoting *Hoffmann*, 982 F. Supp. at 262). Importantly, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs are similarly situated. *Damassia*, 2006 U.S. Dist. LEXIS 73090 at *4, 12, 15 ("[T]he merits of plaintiffs' claims need not be resolved at this stage…"); *see also, Young v. Cooper Cameron Corp*., 229 F.R.D. 50, at *54(S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations…"); *Mazur v. Olek Lejbzon & Co*., 2005 U.S. Dist. LEXIS 30321, at *13 (S.D.N.Y. Nov. 30, 2005) ("Plaintiff need not show an actual violation of the law…"); *Hoffman*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v.*

15

*N.Y. Tel. Co.*, 1993 U.S. Dist. LEXIS 9988 at *6 (S.D.N.Y. July 21, 1993) ("even if plaintiffs'

claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated,

notification at this stage, rather than after further discovery, may enable more efficient resolution

of the underlying issues in the case").

> As Judge Kahn wrote within the last month:

>> Under 29 U.S.C. § 216(b), Plaintiffs need not show numerosity, typicality,
>> commonality, and adequate representation, but rather, need only show
>> they and the proposed class members are "similarly situated". *Id.*; *see also*,
>> *Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995);
>> *Sobczak* [*v. AWL Industries, Inc.*], 540 F. Supp. 2d at 362 [(E.D.N.Y.,
>> 2007)]. This requires only "'a modest factual showing sufficient to
>> demonstrate that they and potential plaintiffs together were victims of a
>> common policy or plan that violated the law.'" *Sobczak*, 540 F. Supp. 2d at
>> 362 (*quoting Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.
>> 1997).

*Eldred*, 2010 U.S. Dist. LEXIS 18260 at *41 (citations completed in brackets).  Stated

differently, the question before the Court is whether the defendant subjected the putative Section

216(b) collective class to a "uniform business practice."  *Damassia*, 2006 U.S. Dist. LEXIS

73090 at *18.

The initial burden for the plaintiffs is minimal, in part, because the Court's decision to

direct notice at this stage is a "preliminary" one that may be modified or reversed once discovery

is completed.  *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *8-10; *see also Gjurovich*, 282 F.

Supp. 2d at 105; *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998).  Thus, in

this Court, there is a two-stage approach to authorizing a FLSA collective action – first, the

Court addresses the motion for conditional collective action certification under the low burden

set forth above and, then, following certification and notice, the action proceeds as a collective

action through discovery, at the end of which the defendant can move for decertification.  *Lynch*

*v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (describing two-stage

approach); *Dumitrescu*, 2008 U.S. Dist. LEXIS 49881 at *7-11 (same).  In fact, "[e]ven if all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case." *Dumirescu*, 2008 U.S. Dist. LEXIS 49881 at *10 (citing cases).

Once the court determines that potential members are similarly situated, it "conditionally certifies" the collective action and Court-authorized notice is sent to potential collective-action class members, who may elect to "opt-in" under § 216(b) by filing written consents.  The action then proceeds as a collective action throughout the remainder of the discovery process.  *See Masson*, 2005 U.S. Dist. LEXIS 18022, at *39; *Dumirescu,* 2008 U.S. Dist. LEXIS 49881 at *10.

**C.      Plaintiffs have Satisfied Their Minimal Burden for Obtaining Conditional Certification**

Plaintiffs have more than met their low burden of showing they are similarly situated with respect to their FLSA claims given their similar job duties and EDS' uniform misclassification scheme which classified all employees in these technical support positions as exempt.  As evidenced in EDS' job family matrices and as confirmed by the testimony related above, the collective action class members all hold similar job positions, performing non-managerial technical support work that primarily involves installing, maintaining, and/or supporting computer hardware and/or software.  And, as cannot be denied, EDS has failed to pay the subclasses in the Service Delivery Job Family, Technical Delivery Job Family and the Corporate Job Family overtime premium for hours worked over 40 in a week.

As described, EDS' corporate representative testified that the job codes are EDS guidelines used globally by the company throughout the United States, and that all of the job codes for which Plaintiffs seek conditional certification are subject to the same overtime pay

policy.  *See* pages 4-13, above.  Mr. Evans, who is also the Human Resources Manager

responsible for wage and hour compliance for EDS, admitted that work location and assigned

clients did change the uniform classifications.  *See* pages 9, 11, 12, above.  This is the paradigm

of what Judge (now Circuit Judge) Lynch termed a "uniform business practice."  *Damassia*,

2006 U.S. Dist. LEXIS 73090 at *18.

In fact, EDS' corporate representative admitted that all EDS employees properly

classified within these job codes are similarly situated inasmuch as they are performing the same

or similar core job functions or job responsibilities reflected in the job descriptions.  Lesser Dec.

Ex. 1 (Evans Dep.) at 123-124).  All employees in these job codes are subject to the same policy

or practice regarding overtime pay, are paid on a salaried basis, classified as exempt, ineligible

for overtime pay, and none received overtime pay.  Lesser Dec. Ex. 1 (Evans Dep.) at 124-126-

128, 131-132, 140-142.

It is thus clear that the collective action members in the sub-classes at issue herein, all

hold similar job positions performing non-managerial technical support work that does not

involve running EDS' business.  At the present stage of this action, it is not necessary that the

class members perform identical duties, only that their positions are similar.  *Motron v. Valley*

*Farm Transport, Inc*. 2007 WL 1113999, at *2 (N.D. Cal. April 13, 2007) (quoting *Grayson v. K*

*Mart Corp*., 79 F.3d 1086, 1096 (11th Cir. 1996)).[11]  As this Court recently recognized,

_____

[11]      Courts in this jurisdiction have likewise concluded that the "similarly situated" standard was
satisfied where a plaintiff alleged that he had worked over forty hours per week without overtime
compensation, that other employees in his position had similar job duties, and that the employer
admitted it paid all such employees in the same manner.  *Patton v. Thomson Corp*., 364 F. Supp. 2d
263 (E.D.N.Y. 2005).  In *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006)*,* the
court approved judicial notice, finding that allegations that different employees were misclassified as
independent contractors "sufficiently alleged a common policy or plan."  *See also Young v. Cooper*
*Cameron Corp*., 229 F.R.D. 50, 55 (S.D.N.Y. 2005); *Masson v. Ecolab, Inc*., 2005 U.S. Dist. LEXIS

differences in what individuals do will not defeat Section 216(b) unless they matter for FLSA purposes.  Judge Lynch accordingly wrote in *Damassia* that "[m]uch of the problem with defendant's attack on plaintiffs' factual showing is that defendant focuses on alleged differences among plaintiffs and among Duane Reade stores that have little if anything to do with whether plaintiffs are similarly situated 'with respect to their allegations that the law has been violated.'" *Damassia*, 2006 U.S. Dist. LEXIS 73090 at *19 (*quoting Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2004)).

That is also why variances in job titles also do not preclude a finding of similarly situated, especially in the information technology field and particularly where evidence exists, as it does here, that the employer itself treats the jobs as similarly situated.  *See e.g. Malloy v. Fleischman & Associates, Inc*., 2009 WL 1585979 (S.D.N.Y. 2009) (certifying a class of technical support workers with 6 different job titles); *Lewis v. Wells Fargo & Co*., 669 F. Supp. 2d 1124 (N.D. Cal. 2009) (certifying a class of technical support workers with 12 different job titles); *Herring v. Hewitt Associates, Inc*., 2007 WL 2121693 at *1, *6 (D.N.J. July 24, 2007) (granting certification as to 3 job titles, each with its own job code, though both plaintiffs held a single title); *Gerlach v. Wells Fargo*, 2006 WL 824652, at *3 (N.D. Cal. Mar. 28, 2006) (granting collective action certification of a class of technical support workers in 3 job titles); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261 (D. Conn. 2002) (certifying an FLSA class and Rule 23 class of systems engineers in various job codes with specific job duties and assignments that were not identical; *Camp v. Progressive Corp.,* 2002 WL 31496661, at *4-5 (E.D. La. Nov. 8, 2002) (granting certification for 6 job titles despite plaintiff holding only 3 positions and

---

18022 at *18 (S.D.N.Y. 2005); *Roebuck v. Hudson Valley Farms, Inc*., 239 F. Supp. 2d 234 (N.D.N.Y. 2002).

defendant producing that class members had "different pay grades and allegedly very different job duties.").

In *Malloy v. Fleischman & Associates, Inc*., 2009 WL 1585979 (S.D.N.Y. 2009), the district court found that the plaintiff "more than satisfied his *de minimis* burden" of showing that he was similarly situated to the proposed class members for purposes of conditional certification under 29 U.S.C. §216(b).  Finding that all of the proposed class members, holding a variety of job titles, performed computer support work, the court conditionally certified a class of employees whose duties included diagnosing and repairing client computer problems, setting up email and Blackberry accounts, setting up computer stations and other hardware, maintaining backup equipment, archiving customer data, installing and deploying computer programs, and "otherwise providing general computer support to [defendant's] clients." *Malloy*, 2009 WL 1585979 at *1.  In addition, the class included employees who also served as server administrators, data integrity backup administrators, networking administrators, and analogous non-supervisory positions. *Malloy*, 2009 WL  1585979 at *1.  Obviously, all of these individuals day-in-and-day-out might have done somewhat differing jobs (*i.e.,* one worked with servers, another with back-up systems or network software, etc.), but the core similarity of their work is, as here, what warranted certification.

Primarily using the employer's admissions, the plaintiffs in another similar case involving misclassified technical support workers successfully obtained Section 216(b) conditional certification in *Lewis v. Wells Fargo & Co*., 669 F. Supp. 2d 1124 (N.D. Cal. 2009). There, the named plaintiffs were three Network Engineers who sought conditional certification for a collective action composed of technical support workers who performed primary duties involving the installation, maintenance, and/or support of technical infrastructure at Wells Fargo.

20

669 F. Supp. 2d at 1126.  The court found that the plaintiffs met their burden of showing that all technical support workers were similarly situated, and certified the class consisting of not only the named plaintiffs' job titles but other job titles including Operating Systems Engineer, Information Security Analyst, Technical Support Specialist, Systems Support Analyst, Web Engineer, Web Support Engineer, Web Systems Engineer, Operating Systems Analyst (level 2), Systems QA Analyst (levels 2 or 3), Computer Operations Analyst (levels 3 or 4), Database Administrator (levels 2 or 3), or Applications Systems Engineer (level 3).

The court noted that plaintiffs met their burden of showing they were similarly situated by showing (as has been shown here) that at Wells Fargo (like at EDS) technical support workers share a job description, are uniformly classified as exempt from overtime pay and perform similar duties.  After noting that the standard for conditional certification at the notice stage was a lenient one, the district court pointed out that "[c]ourts routinely grant conditional certification of multiple job title classes as Plaintiffs' class." *Lewis v.  Wells Fargo*, 669 FSupp.2d at 1128 (citing *Gerlach v. Wells Fargo*, 2006 WL 824652, at *3 (N.D. Cal. Mar. 28, 2006); *Wong v. HSBC Mortg. Corp. (USA),* 2008 WL 753889 (N.D. Cal. Mar. 19, 2008); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007)).

Accordingly, here the evidence demonstrates that EDS had a common practice of failing to pay these collective action members overtime compensation for hours worked over 40 in a week.  Thus, this Court should grant Plaintiffs' motion for conditional certification.

### D.      Court-facilitated Notice Is Appropriate

Once a Section 216(b) collective action is certified, the concomitant step is to authorize a notice.  The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate."
*Hoffman-La Roche*, 493 U.S. at 170.  District courts are encouraged to become involved in the
notice process to ensure "timely, accurate, and informative" notice and to help maintain control
of the litigation.  *Id*. at 171-72.  The Court in *Hoffman-La Roche* established that a court-
approved notice to potential plaintiffs in a FLSA collective action is proper in "appropriate
cases" according to the "discretion" of the district court.  *Id*. at 169-70.  This case is an
appropriate case to send court-approved notice.

In addition, court action is needed because the claims of the potential opt-in plaintiffs are being
extinguished or diminished every day because of the running of the statute of limitations.
*Redman v. U.S. West Bus. Res., Inc*., 153 F.3d 691, 695 (8th Cir. 1998); *Hoffman,* 982 F. Supp. at
260.  Unlike Rule 23 class actions, in § 216(b) collective actions, the statute of limitations for
those who have not filed consent forms is not tolled with the commencement of the action.  *Id*.
As a result, the statute of limitations continues to run on each individual's claim until they file
consent with the Court.  *Id*.  Thus, every day that passes is a day of damages each potential
plaintiff will be unable to recover.

In addition, court-authorized notice providing potential plaintiffs with an opportunity to
pursue their claims in one forum will create significant judicial economies.  A single action
benefits the judicial system by resolving this case collectively.  *See Hoffman-La Roche*, 493 U.S.
at 170.  Such collective adjudication will prevent the proliferation of individual lawsuits that
could result in disparate rulings and wasting of judicial and party resources.  Requiring Plaintiffs
and the opt-ins to file separate cases would not be an efficient use of resources.

Attached as Exhibit 48 to the accompanying Lesser Declaration is Plaintiff's proposed
judicial notice and accompanying consent form.  As required, the notice is "timely, accurate, and

informative." *Hoffman-La Roche*, 493 U.S. at 172.  The notice is direct and to the point and written in plain English.  The proposed notice (and consent form) is in the form used on other occasions by this Court in other FLSA collective actions, and achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of this collective action.  Plaintiffs respectfully submit that it should be approved.

### E.    Production of A List of Collective Action Class Members is Necessary To Facilitate Notice

As discussed above, the proposed class members are "similarly situated" employees for purposes of the FLSA.  In order for Plaintiffs to provide these individuals with notice of the action as contemplated by the law, Defendant should produce an updated list of their names and contact information to Plaintiffs.  *See Damassia*, 2006 U.S. Dist. LEXIS 73090, at *25-6; *Hoffman-La Roche*, 493 U.S. at 170; *Patton*, 364 F. Supp. 2d at 266; *Roebuck*, 239 F. Supp. 2d at 241.  As is also done, Plaintiffs respectfully request that in addition to entering an order approving their proposed notice, this Court also order EDS to produce to Plaintiffs the following within ten days of its order:

> A list, in electronic format, of all persons employed by Defendant as Systems Administrators (34060, 34070, 34080), Telecommunications Analysts (34500, 34510, 34520), Service Center Analysts (34530, 34540, 34550), Infrastructure Analysts (34260, 34270, 34280), Information Analysts (34330, 34200, 34210, 34220), and Information Security Analysts (33700, 33710, 33720, 33730) from three years back from the date of the order to the present including:  name, address, telephone number, social security number, dates of employment, location of employment, employee number, if any.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court follow the well-established precedents by:  (1) promptly authorizing this case to proceed as a conditional collective action; (2) ordering Defendant to identify all individuals within the three subclasses; and (3) authorizing the mailing of the proposed notice to the members of the three subclasses.

Dated:  Rye Brook, New York
        April 7, 2010

<div style="margin-left:40%">

By:    /s/ Seth R. Lesser
Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
(914) 934-9200

Cary S. McGehee
Beth M. Rivers
Maureen M. Crane
PITT, MCGEHEE, PALMER, RIVERS
 & GOLDEN, PC
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800

Brian Lewis Bromberg
BROMBERG LAW OFFICE, P.C.
40 Exchange Place, Suite 2010
New York, New York 10005
(212) 248-7906

Jeffrey M. Gottlieb
BERGER & GOTTLIEB
150 East 18th Street, Suite PHR
New York, New York 10003
Telephone (212) 228-9795

ATTORNEYS FOR PLAINTIFFS

</div>

24